UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANCIS IBE MOGU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1629 (HHK) |
| | ) | |
| MICHAEL CHERTOFF, et al., | ) | |
| Secretary of the Department of | ) | |
| Homeland Security, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Michael Chertoff, Condoleezza Rice, Alberto R. Gonzales[1], Eric M. Bost, Rosemary Melville, Steven Coffman, Charles Luoma and Elizabeth N. Schacter, in their official capacities as the Secretary of the Homeland Security, U.S. Secretary of State, U.S. Attorney General, U.S. Ambassador to South Africa, Director , U.S. Citizenship and Immigration Services, Counsel General in South Africa, Counsular General in the Killarney, South African office, and Counsular Officer in the South African office, respectively ("defendants"), through and by undersigned counsel, respectfully move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, because plaintiff's claim is now moot.  In support of this motion, defendants respectfully refer the Court to the accompanying memorandum of points and authorities. A proposed Order consistent with this motion is attached hereto.

---

[1]Michael Mukasey is substituted for Alberto Gonzales pursuant to Rule 25(d).

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


\_\_/s/_____
CHARLOTTE A. ABEL, D.C. Bar #388582
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCIS IBE MOGU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1629 (HHK) |
| ) | |
| MICHAEL CHERTOFF, et al., ) | |
| Secretary of the Department of ) | |
| Homeland Security, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

This matter involves a claim for mandamus and declaratory relief.[2] Plaintiff alleges that he is entitled, as a matter of law, to an immigrant visa under the diversity visa program. However, as explained below, the Court lacks subject matter jurisdiction over his claim because a consular's decision to grant or deny visas is not subject to juridical review. Additionally, as of September 30, 2007, all unused visa numbers for the 2007 diversity visa program expired and Defendants had no notice of plaintiff's instant Complaint until September 20, 2007. The period of eligibility has thus lapsed, rendering his complaint moot. Accordingly, plaintiff's Complaint should be dismissed with prejudice.

---

[2] Plaintiff also claims, albeit in passing only, that Defendants violated the Administrative Procedure Act ("APA") when they failed to issue a visa. Comp. ¶ 21. There is no need to consider the APA argument because the court lacks subject matter jurisdiction. Romero v. Consulate of U.S., Barranquilla, 860 F.Supp. 319, 324 (E.D. Va. 1994), citing Haitian Refugee Center v. Baker, 953 F.2d 1498, 1507 (11th Cir.), cert. denied, 502 U.S. 1122 (1992).

## II. FACTUAL BACKGROUND

Plaintiff, Francis Ibe Mogu, is a native and citizen of Nigeria and is presently a resident of Kwaluseni, Swaziland   Complaint ("Comp") ¶ 2.  Plaintiff was randomly selected under the United States Diversity Visa Lottery Program and attended an interview at the United States Consulate in Johannesburg, Republic of South Africa, with his son, 13 years of age Simon Ijing Mogu, Junior.  Id.  This interview took place on Tuesday, March 6, 2007 and was followed by another interview on Thursday March 22, 2007.  Id.  The plaintiff's and his son's applications were denied on the basis that his son's replacement passport was found not to be genuine.  Id.  Plaintiff's and his son's passports were confiscated and his visitor's visa to the United States was cancelled.  Id.

Plaintiff filed his complaint in U.S. District Court for the District of Colombia on September 13, 2007, to compel further adjudication of his diversity visa application under a mandamus theory.  He requested that the Court require the U.S. Consulate to adjudicate the Plaintiff's application under the United States Diversity Visa Lottery Program and award plaintiff his reasonable attorney's fees.  Comp. ¶ 23, prayer for relief.

The diversity visa lottery program is explicitly administered on the basis that more names are selected in the lottery than can receive visas.[3]  INA section 201(e), 8 U.S.C. § 1151(e),

---

[3]The administration of the diversity visa lottery program, conducted pursuant to INA section 203(c), 8 U.S.C. § 1153(c), is built upon the requirement that processing must be completed within the appropriate fiscal year.  After the Attorney General has made the determinations relative to previous preference numerical limitations, high and low-admission regions and states, and other numerical criteria for diversity visas, pursuant to INA §203(c)(1), 8 U.S.C. § 1153(c)(1), an announcement is made of low admission states whose natives may compete for diversity visas to be issued during the next fiscal year.  The Department of State's Visa Office specifies the time and place for submitting petitions that conform to 22 C.F.R. 42.33(b)(1), 9 FAM 42.33 Note 5.1, 9 FAM 42.33 Procedural Note 2.1, the Fiscal Year Program Notice in the Federal Register, and the Instructions for the Fiscal Year Program.

allows for 55,000 diversity visa immigrants per fiscal year. In recognition that some of the first 50,000 aliens registered do not pursue diversity visas, or may not be otherwise eligible, the Department of State each year notifies approximately twice as many potential applicants of diversity visa eligibility than there are available numbers, to insure that as many applicants as possible can benefit from this program. Thus, the number of lottery "winners" far exceeds the number that can actually receive a visa. The letter accordingly makes clear to applicants that the notification does not guarantee the applicant will be able to qualify for status in time and that selection does not guarantee that he or she will receive a visa because the number of applicants selected is greater than the number of visas available. See Exh. A, attached hereto.

### III.  ARGUMENT

**A.     Standard of Review - Lack of Subject Matter Jurisdiction**

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). Where a motion to dismiss, however, presents a dispute over the factual basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting, Inc. v. Rep. of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).

**B.     A Consular Officer's Decision is Not Reviewable**.

It has long been acknowledged that the decision of a consular officer to grant or deny a

visa is not subject to court review.  This well-settled doctrine is supported by Supreme Court precedent, the legislative history of the Immigration and Nationality Act ("INA"), and the terms of the statute itself.  See e.g., Centeno v. Schultz, 817 F.2d 1212 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988); Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970 (9th Cir. 1986); Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1981); Rivera de Gomez v. Kissinger, 534 F.2d 518 (2d Cir.), cert. denied, 429 U.S. 987 (1976); U.S. ex rel. Ulrich v. Kellogg, 30 F.2d 984 (D.C. Cir.), cert. denied, 279 U.S. 630 (1929); Romero v. Consulate of the U.S., Barranquilla, 860 F. Supp. 319 (E.D. Va. 1994); Garcia v. Baker, 765 F. Supp. 426 (N.D. Ill. 1990); Hermina Sague v. United States, 416 F. Supp. 217 (D.P.R. 1976).

"The Supreme Court has repeatedly affirmed that the legislative power of Congress over the admission of aliens is virtually complete." Ventura-Escamilla, 647 F.2d at 30 (citing Fiallo v. Bell, 430 U.S. 787, 792 (1977), Kleindienst v. Mandel, 408 U.S. 753, 766 (1972)).  As Justice Harlan stated in Lem Moon Sing v. U.S., 158 U.S. 538 (1895):

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudication.

158 U.S. at 547 (emphasis added).

The Ninth Circuit in Ventura-Escamilla stated that Justice Harlan's statement "still clearly expresses the Court's position." 647 F.2d at 30.  In holding that courts have no jurisdiction to review consular visa denials, the court in Ventura-Escamilla pointed out that:

> The scope of judicial review is necessarily limited by the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government.  Fong Yue Ting v. U.S., 149 U.S. 698, 713

>> (1893). . . . As such, judicial intervention has been restricted to those matters the review of which has been 'authorized by treaty or statute, or is required by the paramount law of the Constitution.' Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976).

647 F.2d at 30.

There is no statutory or other authority that permits judicial review of a consular officer's decision to deny a visa. Rather, the INA confers upon consular officers the authority to issue or deny a visa and specifically exempts the exercise of this power from review by the Secretary of State. As the court pointed out in Ventura-Escamilla, the legislative history establishes that before the enactment of the INA, Congress considered and rejected the suggestion that the consular officer's decision be administratively or judicially reviewable:

>> Consular decisions--Although many suggestions were made to the committee with a view toward creating in the Department of State a semijudicial board, similar to the Board of Immigration Appeals, with jurisdiction to review consular decisions pertaining to the granting or refusals of visas, the committee does not feel that such body should be created by legislative enactment, nor that the power, duties and functions conferred upon consular officers by the instant bill should be made subject to review by the Secretary of State . . . .

647 F.2d at 30-31 (quoting H. Rep. No. 1365, 82nd Congress, 2d Sess., 1952 U.S. Code Cong. & Admin. News 1653, 1688).

Cases decided under the doctrine of consular nonreviewability make clear that courts have no jurisdiction to consider requests for review of consular visa decisions, and that plaintiffs' requests for such relief are deficient as a matter of law. See, e.g., Ventura-Escamilla, 647 F.2d at 30 (the court had no jurisdiction to review consul's decision to deny immigrant visa application); Rivera, 534 F.2d at 519 (same); Garcia, 765 F. Supp. at 427 (the court had no jurisdiction to review refusal of immigrant visa based on INA 212(a) exclusion finding);

Hermina, 416 F. Supp. at 219 (same); Perales v. Casillas, 903 F.2d 1043, 1046 (5th Cir. 1990) (stating in dicta that immigrant visa applicants must establish that they will not likely become public charges and that "[t]he consular decision on the visa application is totally immune from review"). As the court noted in Romero v. Consulate of U.S., Barranquilla, 860 F. Supp. 319, 322 (E.D. Va. 1994), "the doctrine of consular nonreviewability is essentially without exception."

The D.C. Circuit has also extensively defended the doctrine of nonreviewability of consular determinations regarding visa eligibility.

> In prescribing the conditions for allowing aliens to enter the country, Congress acted in accordance with the ancient principle of international law that a nation state has the inherent right to exclude or admit foreigners and to prescribe applicable terms and conditions. This firmly-established principle, dating from Roman times, received recognition during the Constitutional Convention and has continued to be an important postulate in the foreign relations of this country and other members of the international community. For more than a century, the Supreme Court has thus recognized the power to exclude aliens as "'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers--a power to be exercised exclusively by the political branches of government'" and not "granted away or restrained on behalf of anyone.' The Chinese Exclusion Case, 130 U.S. 581, 609, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).
>
> These considerations underlie the Court's long-standing recognition that 'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.' Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952); see also Reno v. American-Arab Comm., 119 S. Ct. 936, 947 (1999). Though it may be 'error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance," Baker v. Carr, 369 U.S. 186, 211 (1962), it is nevertheless 'not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.' United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950).

Bruno v. Albright, 197 F. 3rd 1153, 1158-1159 (D.C. Cir. 1999). Thus, a consular officer's visa determination is not subject to review, even in the circumstances where 1) the officer allegedly failed to follow Department regulations (Burrafato v. Dept. of State, 523 F.2d 554 (2d Cir. 1975), cert. denied, 424 U.S. 910 (1976)); 2) the applicant challenges the validity of the regulations on which the decision was based (Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1981)); 3) the decision was alleged to have been based on a factual or legal error or was contrary to the INA (Centeno v. Shultz, 817 F.2d 1212, 1213 (5th Cir. 1987); Loza-Bedoya v. INS, 410 F.2d 343 (9th Cir. 1969); Grullon v. Kissinger, 417 F. Supp. 337 (E.D.N.Y. 1976), aff'd without op., 559 F.2d 1203 (2d Cir. 1977)); 4) the applicant claims the decision is reviewable under the APA (Romero v. Consulate of U.S., Barranquilla, 860 F.Supp. 319, 324 (E.D. Va. 1994), citing Haitian Refugee Centerv. Baker, 953 F.2d 1498, 1507 (11th Cir.), cert. denied, 502 U.S. 1122 (1992); or 5) the applicant challenges the reasonableness of the determination (U.S. ex rel. London v. Phelps, 22 F.2d 288, 290 (2d Cir 1927), cert. denied, 276 U.S. 630 (1928); Hermina Sague v. United States, 416 F. Supp. 217, 220-21 (D.P.R. 1976)).

In this case, consular records show that Mr. Mogu applied with his son, Simon Ljing Mogu, at the American consular post in Johannesburg, South Africa and they were interviewed on March 6, 2007. The consular officer determined that the passport plaintiff submitted on behalf of his son was fraudulent, and based on the fraudulent documents, questioned the validity of the claimed father-son relationship.

Based on plaintiff's knowing encouragement and assistance to another alien, his son, to try to enter the United States in violation of law by use of a fraudulent passport, the consular officer found him ineligible under INA §212(a)(6)(E)(i), 8 U.S.C. §1181(a)(6)(E)(i), as an alien smuggler and refused to issue an immigrant visa to plaintiff. As the period of eligibility for the diversity

visa lottery has lapsed there is no legal authority to issue a diversity visa after the end of the fiscal year. Moreover, the Court does not have jurisdiction to consider the actions of the consular officer in this matter. Accordingly, the Complaint should be dismissed with prejudice.

**C.     This Matter is Moot Because There is No Remedy After the Close of the Fiscal Year.**

The Court is not only without jurisdiction to order issuance of a visa, but any possibility of visa issuance was moot at the close of the 2007 Fiscal Year, after which time no further visas could be issued under the 2007 diversity visa program consistent with statutory authority, pursuant to 8 U.S.C. §1154(a)(1)(I)(ii)(II). Pursuant to Article III, Section 2 of the Constitution, federal courts are limited to adjudicating only "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). This requirement applies to each form of relief sought by the interested party and must persist throughout the duration of all proceedings. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000). If events outlive the controversy, such that the court may no longer be able to grant meaningful relief, the case must be dismissed as moot. McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F. 3d 52, 55 (D.C. Cir. 2001); see also, Fraternal Order of Police v. Rubin, 134 F. Supp.2d 39, 41 (D.D.C. 2001).

Here, there is no actual on-going controversy. Plaintiff undertook to investigate the situation with the Nigerian Consulate and in addition, requested the United States Consulate in Johannesburg the opportunity to prove his paternity of Simon Ijing Mogu, Jr. Comp. ¶16. Plaintiff proceeded to the Conulate General of the Federal Republic of Nigeria in Johannesburg and offered an explanation. Comp. ¶17. He received a genuine replacement passport (Number A4135871) for his son. Id.

As cited in the Plaintiff's complaint, the Court of Appeals for the Ninth Circuit in Patel v. Reno, 134 F.3d 929 (9th Cir. 1997) has ordered a consular officer to render a decision in compliance with Department of State regulations.  In Patel, the court found that under 22 C.F.R. §42.81(a) (the regulation has subsequently been renumbered and revised) once a visa application is submitted a consular officer has a duty to act - to either issue or refuse an immigrant visa in compliance with 22 C.F.R. §42.81(b) - and may not hold the application in abeyance.  Since the consular officer's refusal in Patel did not comply with 22 C.F.R. § 42.81(b), the Ninth Circuit concluded that it was not a final decision and that it could order a consular officer to adjudicate a visa application in accordance with the regulations.  (The court glossed over whether it actually had jurisdiction over the consular officer for such purposes.)  See 134 F.2d at 932-33.  The Court in Patel did not order the consular officer to issue a visa.  In fact, the ultimate resolution in the Patel case was that the visas were refused and the case was dismissed by the Court because the consular officer had done what the Court order required.  Moreover, the Patel court expressly affirmed the doctrine of consular non-reviewability over determinations involving the issuance or denial of visas.  Id. at 931-32.

Unlike the consular officer in Patel, the consulate in Johannesburg did not suspend processing.  The consular officer instead complied with the requirements of 22 CFR 41.121(a), and refused plaintiff's immigrant visa application under INA §212(a)(6)(E), 8 U.S.C. §1181(a)(6)(E), as an alien smuggler.  Plaintiff chose not to apply for a waiver on the ground of ineligibility.  As plaintiff did not qualify for an immigrant visa, his son's derivative application was also refused.

Plaintiff argues that the United States Consulate in Johannesburg, South Africa has a duty to adjudicate his application in light of the facts that occurred.  Comp. ¶20.  However, in this case,

the consular officer properly adjudicated plaintiff's application and determined he was ineligible for a visa. No visa may now be issue because the 2007 fiscal year has ended. This, in essence, renders the Court without the ability to offer any meaningful relief, and the case moot. As a result, plaintiff's Complaint should be dismissed with prejudice.

### IV. CONCLUSION

For all the forgoing reasons, the Complaint in this action should be dismissed with prejudice.

Respectfully submitted,

\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

\_\_\_/s/_____
CHARLOTTE A ABEL, D.C. Bar #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-307-2332


JAMES PAXTON
Paralegal Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCIS IBE MOGU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1629 (HHK) |
| | ) |
| MICHAEL CHERTOFF, et al., | ) |
| Secretary of the Department of Homeland Security | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

UPON CONSIDERATION of Defendants' Motion To Dismiss, the grounds stated therefor, and the entire record herein, it is on this _____ day of _____, 2008, hereby

ORDERED that the said motion should be and hereby is granted; and it is

FURTHER ORDERED that Plaintiff's complaint be and hereby is dismissed with prejudice.

_____
HENRY H. KENNEDY
UNITED STATES DISTRICT JUDGE