UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANCIS IBE MOGU, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>MICHAEL CHERTOFF, et al., )<br>Secretary of the Department of )<br>Homeland Security, )<br>)<br>    Defendants. )<br>) | Civil Action No. 07-1629 (HHK) |

**DEFENDANTS' REPLY**
**TO OPPOSITION TO MOTION TO DISMISS**

Defendants Michael Chertoff, Condoleezza Rice, Michael Mukasey, Eric M. Bost, Rosemary Melville, Steven Coffman, Charles Luoma and Elizabeth N. Schacter, in their official capacities as the Secretary of the Homeland Security, U.S. Secretary of State, U.S. Attorney General, U.S. Ambassador to South Africa, Director , U.S. Citizenship and Immigration Services, Counsel General in South Africa, Counsular General in the Killarney, South African office, and Counsular Officer in the South African office, ("defendants"), through and by undersigned counsel, respectfully reply to plaintiff's opposition to defendants' motion to dismiss.

## I. INTRODUCTION

This matter involves a claim for mandamus and declaratory relief.  Plaintiff alleges that he is entitled, as a matter of law, to an immigrant visa under the diversity visa program. However, as explained in defendants' motion to dismiss, the Court lacks subject matter jurisdiction over his claim because a consular's decision to grant or deny visas is not subject to juridical review.  Additionally, as of September 30, 2007, all unused visa numbers for the 2007 diversity visa program expired and Defendants had no notice of plaintiff's instant Complaint until September 20, 2007.  The period of eligibility has thus lapsed, rendering his complaint moot.  Accordingly, plaintiff's Complaint should be dismissed with prejudice.

Plaintiff, Francis Ibe Mogu, is a native and citizen of Nigeria and is presently a resident of Kwaluseni, Swaziland.  Complaint ("Comp") ¶ 2.  Plaintiff was randomly selected under the United States Diversity Visa Lottery Program and attended an interview at the United States Consulate in Johannesburg, Republic of South Africa, with his son, 13 years of age Simon Ijing Mogu, Junior.  Id.  This interview took place on Tuesday, March 6, 2007 and was followed by another interview on Thursday March 22, 2007.  Id.  The plaintiff's and his son's applications were denied on the basis that his son's replacement passport was found not to be genuine.  Id. Plaintiff's and his son's passports were confiscated and his visitor's visa to the United States was cancelled.  Id.

The diversity visa lottery program is explicitly administered on the basis that more names are selected in the lottery than can receive visas.  INA section 201(e), 8 U.S.C. § 1151(e), allows for 55,000 diversity visa immigrants per fiscal year.  In recognition that some of the first 50,000 aliens registered do not pursue diversity visas, or may not be otherwise eligible, the

Department of State each year notifies approximately twice as many potential applicants of diversity visa eligibility than there are available numbers, to insure that as many applicants as possible can benefit from this program. Thus, the number of lottery "winners" far exceeds the number that can actually receive a visa. The letter accordingly makes clear to applicants that the notification does not guarantee the applicant will be able to qualify for status in time and that selection does not guarantee that he or she will receive a visa because the number of applicants selected is greater than the number of visas available.

## II.  ARGUMENT

**1.  Mootness**

The Plaintiff did not address in his opposition the mootness argument set forth in the motion to dismiss. As previously argued, there is no longer a legal basis for visa issuance because the fiscal year has ended. The statutory basis of the Diversity Visa lottery program requires that all visas be processed within the fiscal year of that program. There is no legal authority to issue a visa after the end of that fiscal year, which ended September 30, 2007.

**2. Consular Nonreviewability**

In response to the consular nonreviewability argument set out in the motion to dismiss, the Plaintiff argues that no decision has been made on his visa or in the alternative that the APA provides for review of decisions to issue or refuse a visa. As demonstrated in the motion to dismiss, a final decision was made on the Plaintiff's visa application when it was refused on March 6, 2007 because the Plaintiff was ineligible for a visa under INA §212(a)(6)(E), 8 U.S.C. §1182(a)(6)(E), as an alien smuggler. The Plaintiff was informed verbally and in writing his visa application had been refused and the grounds of refusal.

Plaintiff alleges in his opposition that the court has jurisdiction despite the doctrine of consular nonreviewability. However, in the cases he cites, *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), *Mulligan v. Schultz*, 484 F.2d 655 (5th Cir 1988) and *Raduga USA Corp. v. Dept of State*, 2005 U.S. Dist. LEXIS 22941, *22 (S.D. Cal. May 20, 2005), courts have not reviewed the decisions of consular officers but rather ordered consular officers to reach a decision on a visa application. They are inapplicable to the instant case because a final decision was reached on Plaintiff's visa application and it was denied.

In *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997) the court ordered a consular officer to render a decision in compliance with Department of State regulations. In *Patel*, the court found that under 22 C.F.R. §42.81(a) (the regulation has subsequently been renumbered and revised) once a visa application is submitted a consular officer has a duty to act - to either issue or refuse an immigrant visa in compliance with 22 C.F.R. §42.81(b) - and may not hold the application in abeyance. Since the consular officer's refusal in *Patel* did not comply with 22 C.F.R. § 42.81(b), the Ninth Circuit concluded that it was not a final decision and that it could order a consular officer to adjudicate a visa application in accordance with the regulations. The court glossed over whether it actually had jurisdiction over the consular officer for such purposes. *See* 134 F.2d at 932-33. The court in *Patel* did not order the consular officer to issue a visa. In fact, the ultimate resolution in the *Patel* case was that the visas were refused and the case was dismissed by the court because the consular officer had complied with the court's order. Moreover, the *Patel* court expressly affirmed the doctrine of consular non-reviewability over determinations involving the issuance or denial of visas. *Id.* at 931-32.

Unlike the consular officer in *Patel*, the consulate in Johannesburg did not suspend

processing. The consular officer instead complied with the requirements of 22 CFR §42.81(a), and specifically refused Mr. Mogu's immigrant visa application under INA §212(a)(6)(E), 8 U.S.C. §1181(a)(6)(E), as an alien smuggler for his actions in presenting a fraudulent passport on behalf of his son in order to conceal his son's ineligibility under INA §212(a)(7), 8 U.S.C. §1182(a)(7), as an immigrant not in possession of a valid passport. As Mr. Mogu did not qualify for an immigrant visa, his son's derivative application was also refused. Mr. Mogu submitted no waiver application for decision. In this case, the consular officer properly adjudicated Mr. Mogu's application and determined he was ineligible for a visa. In any event, Plaintiff's effort to reverse that decision in order to receive a visa under the lottery program is futile because no visa may now issue because the 2007 fiscal year has ended.

     Plaintiff further alleges in his opposition that the court has jurisdiction under the Administrative Procedure Act. However the Administrative Procedure Act does not apply to decisions of consular officers regarding visa issuance. Plaintiff cites no law in support of this argument. He cites case law regarding the former Immigration and Naturalization Service (INS), now United States Citizenship and Immigration Services (USCIS), which does not have authority to make visa adjudications and therefore does not come under the doctrine of consular nonreviewability. The case law cited by the Plaintiff in support of review of the decisions by INS and USCIS is therefore inapplicable to the instant case against the Department of State regarding the decision to refuse a visa: *Kim v. Ashcroft*, 340 F. Supp. 2d 384 (S.D.N.Y. 2004); *Agbemaple v. INS*, 1998 WL 292441, *2 (N.D. Ill. May 18, 1998); and *Nadler v. INS*, 737 F.Supp. 658 (D.D.C. 1989).

     The D.C. Circuit has specifically determined that the APA does not provide for

jurisdiction over the decisions of consular officers to issue or refuse a visa.  In *Bruno v. Albright* the Court provides an extensive discussion of why the doctrine of consular nonreviewability precludes review under the APA.  *Bruno v Albright*, 197 F. 3rd 1153, 1158-1159 (D.C. Cir 1999).  The Court states the "presumption" of judicial review under the APA, §702, has several exceptions: "There are two notable qualifications. The validity of agency action may not be tested in court if 'statutes preclude judicial review' or if 'agency action is committed to agency discretion by law.'" *Bruno* 197 F.3rd at 1157.  Moreover,

> as revised in 1976, § 702 itself contains another qualifying clause. It provides that 'Nothing herein'--which includes the portion of § 702 from which the presumption of reviewability is derived-'affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground,' 5 U.S.C. § 702(1). The House Report accompanying this amendment described these 'other limitations' as including 'express or implied preclusion of judicial review.' H.R.REP. NO. 94-1656, at 12 (1976).  The Administrative Conference of the United States, which had proposed the specific language enacted as § 702(1), explained that the courts would still refuse 'to decide issues about foreign affairs, military policy and other subjects inappropriate for judicial action.' 1 Recommendations and Reports of the Administrative Conference 191, 225. On the same subject, the Administrative Conference pointed out that 'much of the law of unreviewability consists of marking out areas in which legislative action or traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination.' *Id*. *Bruno*, at 1159-1160.

The Court then concluded that §702 review of the consular decision at issue in that case (which, as here, related to a consular determination regarding visa refusal) is precluded by the provisions of both 701(a)(1) and 702(1): "Whether analyzed in terms of § 702(1), or in terms of § 701(a)(1), the conclusion is the same--the district court rightly held that it could not entertain Saavedra's lawsuit. The overriding consideration is the nature of consular visa decisions. Bruno at 1158."

The Court provided further discussion of the limitations under 701(a)(1): "Or from the principles just discussed we may infer that, in the words of APA § 701(a)(1), the immigration

6

laws 'preclude judicial review' of the consular visa decisions." *Bruno* at 1160.

> To put the matter in terms of APA § 701(a)(1), we may infer that the immigration laws preclude judicial review of consular visa decisions. There was no reason for Congress to say as much expressly. Given the historical background against which it has legislated over the years, including even the congressionally-overruled We Shung decision, 352 U.S. at 184 n. 3, 77 S.Ct. 252, Congress could safely assume that aliens residing abroad were barred from challenging consular visa decisions in federal court unless legislation specifically permitted such actions. The presumption, in other words, is the opposite of what the APA normally supposes. In this respect the case is similar to Department of the Navy v. Egan, 484 U.S. 518, 527, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). See Peoples v. United States Dep't of Agric., 427 F.2d 561, 567 (D.C.Cir.1970). When it comes to matters touching on national security or foreign affairs--and visa determinations are such matters--the presumption of review 'runs aground.' 484 U.S. at 527, 108 S.Ct. 818. This much follows from the Court's instruction that APA review may be foreclosed by virtue of 'the collective import of legislative and judicial history behind a particular statute ... [or] by inferences of intent drawn from the statutory scheme as a whole.' Block v. Community Nutrition Inst., 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), relied upon in Egan (484 U.S. at 530, 108 S.Ct. 818). It follows as well from the Court's recurring statements, of which United States ex rel. Knauff v. Shaughnessy, 338 U.S. at 543, 70 S.Ct. 309, is an example, that there may be no judicial review of the decisions to exclude aliens unless Congress has 'expressly authorized' this. Bruno at 1161, 1162.

In terms of APA § 702(1), the doctrine of consular nonreviewability--the origin of which predates passage of the APA--thus represents one of the 'limitations on judicial review' unaffected by § 702's opening clause granting a right of review to persons suffering 'legal wrong' from agency action. As the report of the Administrative Conference on § 702(1) put it, this is an area "'in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination.'" *Bruno* at 1160.

### III.  CONCLUSION

For all the forgoing reasons, the Complaint in this action should be dismissed with prejudice.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

__/s/_____
CHARLOTTE A ABEL, D.C. Bar #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-307-2332